**E-FILED on** __12/16/11__

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOSEPH H. LANGLOIS, JR., <br><br> Plaintiff, <br><br> v. <br><br> METROPOLITAN LIFE INSURANCE COMPANY, <br><br> Defendant. | No. 11-cv-03472 RMW <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION ON THE STANDARD OF REVIEW <br><br> **[Re Docket Nos. 26, 29]** |

This is an appeal from the denial of disability benefits allegedly owed to plaintiff Joseph H. Langlois, Jr. ("plaintiff") by his employer, defendant Metropolitan Life Insurance Company ("defendant" or "MetLife"). The parties have filed cross motions for summary judgment concerning the standard of review this court should apply in determining whether such denial was proper. For the reasons below, the court GRANTS plaintiff's motion for summary judgment and finds that the denial of benefits in this case will be reviewed de novo.

## I. BACKGROUND

Plaintiff began working for defendant as a financial services representative in 1987. Dkt. No. 27, Decl. of Daniel Feinberg ("Feinberg Decl."), Ex. B ("Langlois Decl.") ¶ 3. In 1998, plaintiff

1  formed Langlois & Associates, an independent financial business operating within MetLife. Decl. of
2  Laura Sullivan, Ex. A (Administrative Record ("AR")) at 233-34. Through his association with
3  defendant, plaintiff was a participant in the MetLife Options and Choices insurance plan (the "Plan").
4        Beginning in 2009, plaintiff started to exhibit symptoms of severe depression and anxiety.
5  Langlois Decl. ¶¶ 15-19. On October 20, 2009, he sought medical treatment, complaining of
6  shortness of breath, tightness in his chest, insomnia, and high stress levels at work. *Id.* ¶ 19; AR 269-
7  74. In December 2009, plaintiff began undergoing weekly treatment with Dr. Rodrigo Munoz, a
8  board certified psychiatrist and neurologist. Langlois Decl. ¶ 20; AR 603. On January 8, 2010,
9  plaintiff went to urgent care at Metro Comprehensive Medical Center after experiencing heart
10 palpitations. Langlois Decl. ¶ 23; AR 149. Based on the severity of his condition, plaintiff stopped
11 working on January 15, 2010. Langlois Decl. ¶¶ 25-26.
12       Defendant subsequently approved plaintiff for short-term disability benefits, Individual
13 Disability Insurance, and Family and Medical Leave Act benefits. AR 1. On May 27, 2010, after the
14 expiration of his short-term disability benefits, plaintiff applied for long-term disability ("LTD")
15 benefits, which defendant denied by letter on September 29, 2010. Feinberg Decl. ¶ 5, Ex. C; AR 47,
16 457-59. According to the denial letter, "the information contained in [plaintiff's] file ... did not
17 support a level of impairment that would have prevented [him] from working in [his] occupation as a
18 Financial Services Representative." Feinberg Decl. ¶ 5, Ex. C.
19       Plaintiff appealed the denial of his claim for LTD benefits on March 4, 2011. Feinberg Decl.
20 ¶ 3, Ex. A; AR 160-177. Defendant acknowledged plaintiff's appeal in a letter dated March 18, 2011.
21 AR 139. On March 24, 2011, defendant requested an independent physician consultant ("IPC")
22 review of plaintiff's entire LTD claim file. AR 102. Defendant informed plaintiff in a letter dated
23 April 14, 2011 that it required additional time to resolve his appeal while it conducted an IPC review.
24 AR 134.
25       On May 4, 2011, defendant contacted plaintiff's counsel to request "any updated medical
26 documentation regarding [plaintiff's] medical condition that you would like included in the appeal
27 review." Feinberg Decl. ¶ 3, Ex. G. Plaintiff's counsel responded on May 9, 2011 that because
28 plaintiff was not seeking compensation for lost wages beyond March 4, 2011, "there is no need for

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION ON THE STANDARD OF REVIEW
No. 11-cv-03472 RMW
EDM       2

**United States District Court**
For the Northern District of California

him to submit updated medical records." *Id.*, Ex. H. On July 7, 2011, defendant sent plaintiff's counsel a letter requesting the raw data from an independent medical examination commissioned by defendant. AR 119. The letter further explained that defendant was continuing its review of plaintiff's appeal and expected IPC reports by July 18, 2011. *Id.* Plaintiff's counsel responded on July 11, 2011 that defendant had failed to render a timely determination of plaintiff's appeal. AR 114. On July 15, 2011, plaintiff filed the instant lawsuit pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, seeking judicial review of defendant's denial of benefits.

Defendant has yet to render a decision on plaintiff's administrative appeal. Feinberg Decl. ¶ 6.

## II. DISCUSSION

### A. Whether the Plan vests defendant with discretionary authority

A challenge to an ERISA plan's denial of benefits is reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). While there are no "magic words" conferring discretion on the plan administrator, the Ninth Circuit has found plan language granting the administrator the "power to interpret plan terms and to make final benefits determinations" sufficient to establish discretionary authority. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (en banc) (citing *Bergt v. Ret. Plan for Pilots Employed by Markair, Inc.*, 293 F.3d 1139, 1142 (9th Cir. 2002) and *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1159 (9th Cir. 2001)).

Here, defendant submitted a copy of the Summary Plan Description ("SPD"), which states that "the Claims Administrator has the discretionary authority to interpret the terms of the Plan and to determine entitlement to Plan benefits in accordance with the terms of the Plan." AR 814; SPD at 19. The SPD further provides that the Claims Administrator "has the final decision making authority on whether or not to pay a claim." *Id.* Such language clearly "bestows on the administrator the responsibility to interpret the terms of the plan and to determine eligibility for benefits." *Abatie*, 458 F.3d at 963.

1       Plaintiff argues that language in the SPD is insufficient to sustain a finding of discretionary
2 authority because the SPD is "not the plan document itself." Dkt. No. 30 at 3. Plaintiff relies on the
3 Supreme Court's recent decision in *CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011), which noted that
4 summary plan descriptions, "important as they are, provide communication with beneficiaries *about*
5 the plan, but … their statements do not themselves constitute the *terms* of the plan." *Amara*, 131 S.
6 Ct. at 1878 (emphasis in original). However, the court does not read *Amara* to preclude *any* reliance
7 on the SPD in determining whether the plan administrator has discretion to deny benefits.

8       The *Amara* Court considered whether a district court could enforce the terms of an SPD where
9 those terms conflicted with the terms in governing plan documents. *Amara*, 131 S. Ct. at 1876-78. In
10 that context, the Court rejected the notion that terms in an SPD "necessarily may be enforced . . . as
11 the terms of the plan itself." *Id.* at 1877. The Tenth Circuit has interpreted the *Amara* decision to
12 present two "fairly simple propositions … (1) the terms of the SPD are not enforceable when they
13 conflict with governing plan documents, or (2) the SPD cannot create terms that are not also
14 authorized by, or reflected in, governing plan documents." *Eugene S. v. Horizon Blue Cross Blue*
15 *Shield of N.J.*, No. 10-4225, 2011 U.S. App. LEXIS 22803, at *10 (10th Cir. Nov. 15, 2011). The
16 *Eugene S.* court further concluded that language in the SPD may demonstrate discretionary authority
17 where "the SPD is part of the Plan." *Id.* at *11 (holding that because the SPD at issue stated that it "is
18 made part of the Group Policy," its terms were sufficient to find that the Plan conferred discretion on
19 the plan administrator).

20       In this case, the SPD provides: "The Company intends that the terms of the Plan described in
21 this material, including those relating to coverage and benefits, are legally enforceable, and that the
22 Plan is maintained for the exclusive benefit of participants, as defined by law." AR 798; SPD at 3.
23 The SPD also notes that "official plan documents … will govern in every respect and instance." *Id.*
24 In the wake of *Amara*, the most reasonable construction of this language is that the terms of the SPD
25 are legally enforceable elements of the Plan to the extent that they do not conflict with the terms of
26 the Plan itself. *See Bergt*, 293 F.3d at 1143 ("The SPD is a plan document and should be considered
27 when interpreting an ERISA plan."). Plaintiff has not argued that there is any conflict between the
28 language in the SPD conferring discretion on the plan administrator and the terms of the Plan itself.

*Compare Amara*, 131 S. Ct. at 1876-78. Indeed, although plaintiff indicates he does not have a copy of the Plan documents, he has not stated that he was denied access to such documents, or even that he requested them during the administrative appeal process or during discovery. Nor did he ask the court to delay ruling on the instant motions so that he could seek out any such documents. Furthermore, at oral argument, defendant's counsel stated that while there may be other documents associated with the Plan, defendant treats the SPD as the Plan. The court therefore finds that defendant has met its initial burden to show that the Plan vests discretionary authority in the plan administrator.

**B. Whether "procedural irregularities" alter the standard of review in this case**

Even where the plan vests the claims administrator with discretionary authority, there are "some situations in which procedural irregularities are so substantial as to alter the standard of review." *Abatie*, 458 F.3d at 971. Procedural violations of ERISA may shift the standard of review from abuse of discretion to de novo only where such violations are "so flagrant as to alter the substantive relationship between the employer and employee, thereby causing the beneficiary substantive harm." *Gatti v. Reliance Std. Life Ins. Co.*, 415 F.3d 978, 985 (9th Cir. 2005). In addition, the district court must review de novo a claim for benefits when an administrator "fails to exercise discretion" at all. *Abatie*, 458 F.3d at 972.

**1. Defendant's failure to issue a decision on plaintiff's appeal**

In the instant action, plaintiff argues that defendant's failure to issue a decision on plaintiff's appeal is a procedural violation sufficient to require application of de novo review. The SPD provides that a decision regarding an appeal from a denial of benefits must be issued within 45 days. *See* SPD at 23; AR 818. In addition, a 45 day extension is allowed if "deemed necessary" by the plan administrator and notice is given to the plan participant. *Id.* These time limits are mirrored by Department of Labor Regulations. *See* 29 C.F.R. § 2560.503-1. Thus, under both the Plan and applicable regulations, an appeal from a denial of benefits must be resolved within a maximum of 90 days. The parties do not dispute that plaintiff filed his appeal on March 4, 2011, or that defendant had yet to issue a decision at the time of the hearing on the instant motions, some 287 days later. The question is whether defendant's failure to issue a timely decision–or rather, failure to issue *any*

decision by time parties sought a determination of the appropriate standard of review—deprives defendant of the deference to which it would otherwise be due.

In answering that question, plaintiff argues that the court should rely on *Jebian v. Hewlett-Packard Co. Emple. Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1105 (9th Cir. 2003). In *Jebian*, the plan at issue provided that if the administrator did not respond to the claimant's appeal within sixty days, the claim would be "deemed denied" on review. *Id.* at 1102. The applicable regulation at the time, 29 C.F.R. § 2560.503-1(h) (1998), also stated that if the appeal was not decided within sixty days, the appeal was "deemed denied." *Id.* at 1103. The Ninth Circuit held that where a claim is "deemed denied" after the expiration of a given time period "we will not defer [because the] decision is, under the Plan, necessarily the mechanical result of a time expiration rather than an exercise of discretion … Deference to an exercise of discretion requires discretion actually to have been exercised." *Id.* at 1103-05. Plaintiff contends that as in *Jebian*, defendant has "failed to exercise its discretion at all by not rendering a written decision on his appeal," and thus a de novo standard should apply. Dkt. No. 26 at 7.

Defendant contends that the court should instead rely on the Ninth Circuit's subsequent decision in *Gatti v. Reliance Std. Life Ins. Co.*, 415 F.3d 978 (9th Cir. 2005). As in *Jebian*, the plan administrator in *Gatti* failed to issue a written decision within the regulatory time limit. However, the plan itself included no time limit governing appeals. Thus, while the claim was "deemed denied" under the applicable regulation, it triggered no similar provision under the plan. The Ninth Circuit held that the plan administrator's failure to issue decision within the regulatory time limit gave the claimant the "final decision" necessary to sue in federal court, but did not alter the standard of review. Defendant argues that *Gatti* "narrowed *Jebian*'s application to the particular circumstance where the plan itself contains language deeming a claim denied if not timely determined on appeal." Dkt. No. 32 at 11.

The circumstances here fall somewhere between *Jebian* and *Gatti*. As in *Jebian*, defendant clearly violated the time limits provided by both the regulations and the Plan itself. In fact, the violation here is far more egregious because defendant has yet to issue a decision on plaintiff's request for review, while the defendants in both *Jebian* and *Gatti* denied the plaintiff's appeal before the parties moved for

summary judgment. *See Jebian*, 349 F.3d at 1102; *Gatti*, 415 F.3d at 981. On the other hand, as in *Gatti*, such a violation does not deem plaintiff's claim "denied" under the terms of the Plan.[1] Nor is plaintiff's claim "deemed denied" under the applicable regulation, which was amended in 2000 to instead provide that in the event of a violation of the relevant time limits, "a claimant shall be deemed to have exhausted the administrative remedies available under the plan." *See* 29 C.F.R. § 2560.503-1(l) (2000). Thus, it cannot be said that the decision that will ultimately be the subject of review by this court is purely "the mechanical result of a time expiration rather than an exercise of discretion." *Jebian*, 349 F.3d at 1105.

As might be expected given the lack of clear authority governing such a situation, other courts in this circuit considering substantially similar circumstances have reached divergent conclusions. *Compare Hinz v. Hewlett Packard Co. Disability Plan*, No. 10-38644, 2011 U.S. Dist. LEXIS 38644 (N.D. Cal. Mar. 30, 2011) (abuse of discretion standard); *Cushman v. Motor Car Dealers Services, Inc.*, 652 F. Supp. 2d 1122 (C.D. Cal. 2009) (abuse of discretion standard); *Kowalski v. Farella, Braun & Martel, LLP*, No. C-06-3341, 2007 U.S. Dist. LEXIS 56005 (N.D. Cal. July 23, 2007) (de novo standard); *Roach v. Kaiser Permanente Long Term Disability Plan*, No. 08-4746, 2009 U.S. Dist. LEXIS 40394 (C.D. Cal. May 12, 2009) (de novo standard). In an unpublished decision, the Ninth Circuit summarily determined that where the insurer "never" rendered a final decision on the plaintiff's administrative appeal, de novo review was appropriate. *See Capianco v. Long-Term Disability Plan of Sponsor Uromed Corp.*, 247 Fed. Appx. 885, 886 (9th Cir. 2007) (citing *Jebian*, 349 F.3d at 1106 n.6).

This court finds that because the plan administrator failed without good cause to resolve plaintiff's administrative appeal by the time the appropriate standard of review was to be determined by the district court, the de novo standard applies. As the Ninth Circuit has explained, "a plan administrator's decision is entitled to deference only when the administrator exercises discretion that the plan grants as a matter of contract." *Abatie*, 458 F.3d at 971; *see also Firestone*, 489 U.S. at 111 ("[W]hen trustees are in existence, and capable of acting, a court of equity will not interfere to control them in the exercise of a *discretion vested in them by the instrument* under which they act.") (emphasis in original) (citations omitted). The contract between plaintiff and defendant clearly contemplates the

---

[1] The SPD does not indicate what impact, if any, a failure to comply with the 90-day time limit has on a participant's appeal.

1 availability of an appeal of an adverse benefits determination. Indeed, the abuse of discretion standard
2 assumes that an administrative appeal has been taken. *See Barboza v. Cal. Ass'n of Prof'l Firefighters*,
3 651 F.3d 1073, 1076 (9th Cir. 2011) ("As a general rule, an ERISA claimant must exhaust available
4 administrative remedies before bringing a claim in federal court."). The administrative appeals process
5 provides an important "second look" at the plan administrator's initial determination and justifies a more
6 deferential review by the district court. Thus, where the plan administrator fails to resolve an appeal–or
7 at least declines to issue a decision before the claimant has invested substantial time and resources
8 litigating in federal court–it is more than a "technical violation[] of ERISA's requirements." *Gatti*, 415
9 F.3d at 985. In such an instance, the administrator has "has forfeited the privilege to apply his or her
10 discretion." *Abatie*, 458 F.3d at 972 (citing *Gritzer v. CBS, Inc.*, 275 F.3d 291, 296 (3d Cir. 2002)).

11 Moreover, there do not appear to be any special circumstances justifying defendant's substantial
12 delay in this case. The record indicates that the only actions defendant took between the filing of
13 plaintiff's appeal and the expiration of the 90-day time period were: (1) request an independent physician
14 consultant (IPC) review of plaintiff's file; and (2) send a letter to plaintiff's attorney seeking updated
15 medical information which was ultimately deemed unnecessary. *See* Feinberg Decl., Exs. F, G.
16 Defendant has not argued that either action was unexpected, problematic or in any way obstructed by
17 plaintiff's conduct. *Compare Tabatabai v. Hewlett-Packard Co. Disability Plan*, No. C-06-00695, 2006
18 U.S. Dist. LEXIS 66110, at *8 (N.D. Cal. Sept. 1, 2006) (untimely processing of an appeal was excusable
19 because the employer was "faced with a situation in which a claimant appealed and then disappeared.").
20 Nor have events since the running of the 90-day time limit explained why defendant has yet to issue a
21 decision. On July 7, 2011, more than a month after the time limit had passed, defendant contacted
22 plaintiff's counsel to request "raw data" from a medical examination that had been commissioned by
23 defendant. *See id.*, Ex. J. Plaintiff's counsel has explained that such data was never in his possession,
24 and defendant concedes that the data was "ultimately … forwarded" directly to defendant's consultants.
25 Dkt. No. 32 at 9. Apart from continuing to review its consultants' reports, defendant appears to have
26 taken no further action since July 7, 2011.

27 Finally, the record of "good faith" communication between the parties regarding the status of
28 plaintiff's appeal is insufficient to justify a more deferential standard of review. *See Jebian*, 349 F.3d

at 1107 (noting in dicta that "inconsequential violations of the deadlines . . . would not entitle the claimant to de novo review … in the context of an ongoing, good faith exchange of information between the administrator and the claimant.") (citing *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 635 (10th Cir. 2003). Defendant sent letters to plaintiff through counsel on March 18, 2011, April 14, 2011, May 4, 2011 and July 7, 2011. *See* Feinberg Decl., Exs. E, F, G, I. Only the letter of July 7, sent over a month after the expiration of the 90-day window, gave any indication of when plaintiff might expect resolution of his claim. Over sixty days of "radio silence," *Gilbertson*, 328 F.3d at 636, on either side of the appeal deadline is "neither productive nor reasonably informative to the claimant." *Jebian*, 349 F.3d at 1107. Accordingly, the court concludes that the de novo standard is appropriate in this case and GRANTS plaintiff's motion for summary judgment on the standard of review.[2]

## III. ORDER

For the foregoing reasons, the court GRANTS plaintiff's motion for summary judgment on the standard of review and DENIES defendant's motion on the same issue.

DATED: 12/16/11

RONALD M. WHYTE
United States District Judge

---

[2] Because the court determines that defendant's failure to resolve plaintiff's appeal justifies the application of de novo review, it need not reach the issue of what impact defendant's alleged conflict of interest–as the entity charged with both paying benefits and determining eligibility for them–would have under an abuse of discretion standard. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008) (finding that while a conflict of interest may be a "factor" in determining whether a plan administrator abused its discretion, it does not shift the standard of review).